Quintin G. Shammam (State Bar No. 246926)
Law Offices of Quintin G. Shammam
2221 Camino Del Rio South, Suite 207
San Diego, California 92108
Telephone: (619) 444-0001
Facsimile: (619) 501-1119

Attorney for Debtor D.N.S.A., INC.

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| In Re: | CASE NO.: 13-11745-CL11 |
|---|---|
| D.N.S.A., INC., | **DEBTOR'S "FIRST DAY" MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF** |
| Debtor. | |

**TO THE HONORABLE JUDGE LATHAM, UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, THE TWENTY LARGEST UNSECURED CREDITORS, AND INTERESTED PARTIES:**

D.N.S.A., INC. ("Debtor" or "Debtor-in-Possession"), hereby moves the Court, for the entry of an interim order pursuant to 11 U.S.C §§ 361 and 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure: (a) authorizing the Debtor to use cash collateral pursuant to the Bankruptcy Code (the "Code"); (b) approving the form of adequate protection provided to the Debtor's secured lenders pursuant to the Code; (c) scheduling a final hearing on the Motion to consider entry of a final cash collateral order; and (d) granting related relief (collectively, the "Motion"). The Debtor has also filed a Declaration of Sabah Abro in support of this Motion.

///

**INTRODUCTION/BACKGROUND**

The Debtor's Motion seeks the entry of an interim order (a) authorizing the Debtor's use of cash collateral on an interim basis for 90 days pending a final hearing on the Motion (the "Final Hearing"); (b) approving the form of adequate protection to the Debtor's pre-petition secured lenders ("Secured Lenders"); (c) prescribing the form and manner of notice and setting the time for the Final Hearing; and (d) granting related relief.

The Debtor is a Single Asset Real Estate Company as defined under Section 101(51B) of the Bankruptcy Code. The primary asset for the Debtor is a building located at 526-540 National City Blvd., National City, CA. (the "Subject Property") (Declaration of Sabah Abro, ¶2). The Subject Property is encumbered by two separate deeds of trust. The first deed of trust secures a loan from Neighborhood National Bank with an approximate balance of $938,000.00. The second deed of trust secures a loan from Amable Note Buyer with a balance of $100,000.00. Both deeds of trust contain an "assignment of rents" clause creating a lien on all rents received from the Subject Property. (Declaration of Sabah Abro, ¶3).

The Debtor filed for bankruptcy due to an impending trustee's sale based upon non-monetary defaults alleged by Neighborhood National Bank. Debtor is substantially current on its loan with Neighborhood National Bank aside from one prepetition payment (December 2013) that was not made due to the filing of this bankruptcy. The Debtor is current with all payments to Amable Note Buyer. (Declaration of Sabah Abro, ¶4,5).

The Subject Property was used as an adult day care during the day and a banquet hall on some nights, As of December 31, 2013, the adult day care has vacated the premises. The Debtor is searching for a new tenant or, alternatively, the debtor's principal, Sabah Abro, may open a day care to occupy the Subject Property during the days. In addition, subject to Bankruptcy Court approval, the Debtor has entered into settlements with both the adult day care and its guarantor in the amount of $248,000.00. (Declaration of Sabah Abro, ¶6). With the exception of administrative costs and a planned $3,000.00 a month payment for insider compensation for Mr. Abro, the cash collateral shall be used exclusively for day to day operations and payments required to both Neighborhood National Bank and Amable Note

Buyer.

The secured creditors are adequately protected. The total amounts due to secured creditors is approximately $1,038,000.00 while the value of the subject property is approximately $2.5 million. (Declaration of Sabah Abro, ¶8).

The Debtor's use of cash collateral is necessary in order to maintain the present value and condition of the bankruptcy estate as the Debtor must make ongoing payments to sustain its business. Any inability to use such funds during Debtor's Chapter 11 case could essentially shut down the business and make the reorganization impossible, all while burdening and decreasing the value of the Debtor's bankruptcy estate. An interim order for Cash Collateral is appropriate as it will maximize the value for all creditors of the estate.

## JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157(b)(2)(M) and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

///

**BANKRUPTCY RULE 4001(b)**

Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, the Debtor submits the following information regarding the secured interests on its cash and the following relevant provisions of the Interim order as follows:

| TERM | DESCRIPTION |
|---|---|
| Names of Each Entity with Interest in Debtor's Cash Collateral | • Neighborhood National Bank (1st Mortgage)<br>• Amable Note Buyer (2nd Mortgage) |
| Use of Cash Collateral/Monthly Budget | See request for Cash Collateral Section Below for Projected 180 day budget |
| Termination Date | July 1, 2014 |
| Adequate Protection | The creditors are adequately protected. The estimated value of the building is $2.5 million. There is approximately $1,038,000.00 in secured debt leaving approximately $1,462,000.00 in equity. |

**POINTS AND AUTHORITIES**

The Debtor's use of property of its estate is governed by Section 363 of the code, which in relevant part provides:

> If the business if the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without a notice or a hearing, and may use property of the estate in the ordinary course of business without a notice or hearing.

11 U.S.C. § 363 (c)(1)

"In many chapter 11 cases, uses of cash collateral is vital to a successful reorganization." (*In re Proalert, LLC*, 314 B.R. 436, 442 BAP 9th Cir. 2004) The Court is permitted to authorize the use of cash collateral pursuant to Section 363 (c)(2), which in relevant part provides:

> The [debtor] may not use, sell or lease cash collateral under paragraph (1) of this subsection unless-
> (A) Each entity that has an interest in such cash collateral consents; or
> (B) The court, after notice and a hearing, authorizes such use, sale, or lease on accordance with the provisions of this section.

11 U.S.C. § 363 (c)(2)

While its generally true under Bankruptcy law post-petition rents subject to a recorded collateral assignment are subject to the creditor's lien in bankruptcy, *In Re Scottsdale Medical Pavilion*, 159 B.R. 295, 300-01 (9th Cir. BAP 1993), aff'd 52 F.3d 244 (9th Cir. 1995), only that portion of rent that remains after paying normal operation expenses can truly be considered "cash collateral." *In Re Ambanc La Mesa ltd. Partnership*, 115 F.3d 650, 652 (9th Cir. 1997) (in plan confirmation context, appellate court bankruptcy court erred in valuing collateral when it failed to "include cash collateral, the sum of rents less operating expenses at the time of confirmation of the Plan, in the present value securing" the claim.) This conclusion comports with simple logic in that if the Debtor's lenders directly controlled the assets of the Debtor, those creditors would only recover and apply to their claims that portion of the rent, the amounts, if any, which exceed the costs to operate the property secured by cash collateral.

Debtors, as Debtors-In-Possession, are fiduciaries and have the duty to operate their rental real property in good fashion, to pay expenses and the costs of maintenance, to preserve and protect the property, and to account for the monies received and the expenses paid. *In Re: DeversII,* 759 F.2d 751 (9th Cir. 1985) *In re: Morning Star Ranch Resorts,* 64 B.R. 818 (Bankr.D.Col. 1986). Debtors, as Debtors-In-Possession, may use cash collateral for a reasonable period of time or the purpose of maintaining and operating its property under 11 U.S.C. §363(c)(2)(B). *In re: Oak Glen R-Vee,* 8 B.R. 213, 216 (Bankr.C.D. Cal. 1981); *In re: Tuscon Industrial Partners,* 129 B.R. 614 (9th Cir. BAP 1991).

The Court's authorization for use of cash collateral must adequately protect the creditor's interest in the collateral. *In re Sunnymead Shopping Center Co.,* 178 B.R. 809, 814 (9 Cir. BAP 1995). The Court must determine the value of a secured creditor's interest in the collateral and whether the proposed use of cash collateral threatens that value. *In re George Ruggiere Chrysler-Plymouth, Inc.*

**DEBTOR'S "FIRST DAY" MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF**

1  727 F. 2d 1017, 1019 (11th Cir. 1984).

## REQUEST FOR USE OF CASH COLLATERAL

Attached to the Declaration of Sabah Abro as exhibit "A" is a budget containing a 6 month projected budget for which the Debtor seeks to use cash collateral (the "Budget"). An inability for the Debtor to use its incoming receipts and cash could essentially shut down the Debtor's business and make reorganization impossible. As such, it is essential for the Debtor to have use of its cash collateral.

Creditors are adequately protected. The estimated value of the building is $2.5 million. The combined secured loans are approximately $1,038,000.00 leaving an equity cushion of approximately $1,462,000.00.  Moreover, a majority of the projected use of the cash collateral is to keep current with secured loans.

## REQUEST FOR FINAL HEARING

Pursuant to Section 363(c)(3) of the Code, this Motion may be scheduled by the Court in connection with the needs of the Debtor and may be either a preliminary hearing or a final hearing. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that this Court schedule a final hearing on this Motion for use of cash collateral as soon practicable at the convenience of the Court, but not earlier than fifteen (15) days after this preliminary hearing and not later than forty-five (45) days following the entry of the Interim Cash Collateral Order, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

## NOTICE OF THIS MOTION IS ADEQUATE

A copy of this Motion will be served by the Debtor on

1. The Office of the United States Trustee;
2. The all creditors as listed on the Petition;
3. Any party requesting special notice or having filed a claim by the date of the filing.

No Creditors Committee has yet been appointed in the Debtor's case under Section 1102 of the Code. As a result, the Debtor feels that notice to the above parties is sufficient under the circumstances. A certificate of service is attached to this motion.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, (a) granting this Motion in its entirety; (b) authorizing the Debtor to use Cash Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code; (c) approving the form of adequate protection provided to the Secured Lenders; (d) scheduling a Final Hearing on this Motion to consider entry of a final cash collateral order; and (e) granting such other and further relief as this Court deems just and appropriate.

DATED: 1/8/2014                                    /s/ Quintin G. Shammam
                                                   BY: QUINTIN G. SHAMMAM, ATTORNEY
                                                   FOR DEBTOR-IN-POSSESSION
                                                   D.N.S.A., INC.